CHARLES JENNINGS & others *vs.* FITCHBURG RAILROAD
COMPANY.

Suffolk.   March 15, 1888. — May 4, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, & HOLMES, JJ.

*Action — Negligence — Railroad — Drawbridge.*

A superintendent of a railroad drawbridge has no right to open it within the fifteen
minutes allowed to a train, by the Pub. Sts. c. 112, § 150, to cross the draw be-
fore and after it is due by its schedule time.

A declaration in an action against a railroad corporation, alleged that the plain-
tiff's schooner, while waiting to pass its drawbridge, got her stern caught under
the draw, which was closed; that the master requested the superintendent to
open the draw, and he wilfully and negligently refused; and that, as the tide
was rising, she was thereby sunk and lost; but did not aver that the request was
made at a time when the plaintiff or the master had a right to have the draw
open.  *Held,* that no cause of action was shown.

TORT.  The declaration, as amended, alleged that the plain-
tiffs were the owners of a schooner, which was proceeding up
the Charles River with a cargo of sand; that the defendant, as
authorized by statute, owned and maintained a drawbridge for
the passage of trains across that river; that the defendant was
required by law to open the drawbridge and afford all proper
accommodation to vessels having occasion to pass the same; that
the schooner, having occasion to pass the drawbridge, and while
waiting to pass it, caught her stern under the draw, which was
closed, in such a manner that she could not be released except
by opening or partially opening the draw; that the draw might
easily and quickly, and without damage, injury, or delay to the
defendant, its trains or passengers, have been opened slightly,
and the schooner released; that the master and crew of the
schooner requested the defendant or its agents in charge of the
draw so to open it, but they wilfully and negligently refused to
do so, or to allow the draw to be opened, whereby the schooner
was pressed entirely under water as the tide rose, and with her
cargo and appurtenances was sunk and totally lost.  The de-
fendant demurred to the declaration, on the ground that there
was no allegation of any wrongful act or omission on the part of
the defendant.  In the Superior Court the demurrer was sus-

tained, and judgment was ordered for the defendant; and the plaintiffs appealed to this court.

*F. Dodge*, for the plaintiff, contended, among other things, that the discretion given by the Pub. Sts. c. 112, § 149, to the superintendent of a railroad drawbridge as to the passage of vessels, could be exercised within the fifteen minutes allowed by § 150 for the passage of trains before and after they were due, and that it was immaterial that the declaration did not set forth that the vessel was caught outside of that limit.

*G. A. Torrey*, for the defendant.

MORTON, C. J.    The defendant corporation is authorized to maintain a bridge across Charles River, having two draws for the safe and convenient passage of vessels, and is required to " keep the draws in good repair, and open the same, and afford all proper accommodation to vessels having occasion to pass the same by day or night."    St. 1847, c. 200.    St. 1869, c. 352. In 1855 a general law was passed " regulating the passing of vessels through railroad drawbridges," and its provisions have been substantially continued to the present time, and are now found in the Public Statutes.    St. 1855, c. 434.    Pub. Sts. c. 112, §§ 148–155.

We must look to these provisions to ascertain the rights and duties of the railroad corporation, and of the owners or masters of vessels who have occasion to use the draw.    The railroad company is required to appoint a competent superintendent, who shall have charge of the draw, shall at all hours of the day and night be ready to open it, shall decide in what order vessels are to pass, and furnish proper facilities for such passing, allowing a reasonable time for vessels to pass, having regard to the convenient and secure passage of engines and trains.    But the statute contains the provision that " a railroad train shall be allowed fifteen minutes to cross a draw before and after it is due by its time-table, and any approaching train shall be allowed a further reasonable time to pass."    Pub. Sts. c. 112, § 150.    This is an important provision, designed to guard the safety of passengers on the railroad.    By necessary implication, it forbids the opening of the draw at any time within fifteen minutes of the time when a train is due by its time-table, and within fifteen minutes after, unless the train which is due passes the draw.    If within

that time the master of a vessel applies to pass the draw, it is the duty of the superintendent to refuse to open it. He could not open it without violating the statute, and exposing himself and the railroad company to severe penalties.

In the case at bar, the declaration alleges that the plaintiff's vessel, having occasion to use the defendant's draw, by some negligence or accident for which the defendants were not responsible got her stern caught underneath the drawbridge, which was closed, and as the tide was rising she was thereby sunk; and that the master requested the superintendent to open the draw, and he refused. It does not allege in any way that this demand was made at a time when the owner or master of the vessel had a right to have the draw open. For aught that appears, it may have been made within fifteen minutes of the arrival of an approaching train, when the superintendent was forbidden by the statute to open the draw. The declaration does not contain sufficient averments to show that it was the duty of the superintendent to comply with the request and open the draw. It therefore shows no negligence for which the defendant is liable.          *Judgment affirmed.*